IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00471-RM-SBP

LOUIS WASHINGTON,

    Plaintiff,

v.

ROBERT WONG,
JOSEPH HESS,
DAVID WALLER,
LANCE DYER,
WESTON HALL, and
MICHAEL TORRES,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Plaintiff Louis Washington's motion to amend his complaint. ECF No. 54 (the "Motion"). Mr. Washington proposes adding a failure to train and supervise claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of Aurora (the "City"). ECF No. 54-10 (redlined version of proposed amended complaint). This amendment would add the City as a party to this case, in which Mr. Washington has sued six individual officers from the Aurora Police Department. Mr. Washington also proposes adding a supervisory liability claim against one of the Defendants, Lance Dyer. Defendants oppose the Motion. ECF No. 58. Mr. Washington has replied. ECF No. 60. The Motion is referred (ECF No. 55), and the undersigned considers it pursuant to 28 U.S.C. § 636(b). For the reasons that follow,

this court respectfully **GRANTS** the Motion.

*I.      Background*

Through counsel, Mr. Washington brought this civil rights action on February 20, 2023. ECF No. 1. Plaintiff alleges that on August 29, 2021, Defendants used unnecessary and unreasonable force by sending a police canine blindly into Plaintiff's home to bite and injure him while he was sleeping in bed. Mr. Washington alleges that the

> Defendants predetermined that they would let the canine run loose in his house in order to find and bite Mr. Washington, despite having no information of a serious crime (Mr. Washington was allegedly violating a protection order) or that he posed an imminent threat. In fact, the reporting party (Mr. Washington's ex-wife) specifically told the officers that Mr. Washington would not be a threat or combative with officers. Despite receiving this clarifying information directly from the reporting party, Defendant Wong ordered his canine to find and bite Mr. Washington without any justification, and Defendants Hess, Waller, Dyer, Hall, and Torres either participated in the planned release and/or stood idly by without making any attempt to intervene against the use of excessive force.

Motion at 2. Plaintiff sues Defendants in their individual capacities for excessive force and failure to intervene in the use of force for this incident.

Defendants sharply dispute the allegations and state numerous defenses. *See, e.g.*, ECF No. 24 (Answer), ECF No. 32 (Scheduling Order) at 3-6 (summarizing what the facts will show in this case).

The parties began discovery in June 2023, when this court entered the Scheduling Order. Mr. Washington asserts that during discovery, he learned:

> [T]he City of Aurora had not trained its officers on the following: (1) how to define and determine whether there is an immediate threat justifying the use of a police canine to find and bite a suspect; (2) that officers should be aware of and address the probability that persons on different levels of a home may not be able to hear announcements/commands/warnings given on ground level outside a home, which

2

> requires communication on each level of a building before allowing a police canine to bite a non-resisting, non-threatening suspect; (3) that canine handlers must take extra precautions for off-leash deployments, particularly including maintaining sight and control over off-leash canines that are trained to find and automatically bite suspects; and (4) the responsibility of officers to intervene when participating in the unjustified use of a police canine.

Motion at 2.

Based on the information he has gathered in discovery, Mr. Washington now seeks leave to add a *Monell* claim against the City for failure to supervise and train, and a supervisory claim against Mr. Dyer. Defendants oppose the Motion on several grounds, which will be addressed below.

II.     *Legal Standards*

Leave to amend a pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). But it may be denied in situations where the proposed amendment is the result of undue delay, undue prejudice to the nonmovant, bad faith or a dilatory motive by the movant, or where the proposed amendment is futile. *Sinclair Wyo. Refining Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021). Ultimately, the court's focus is primarily the prejudice to the non-movant that would result from allowing amendment. *Id.*

In situations where amendment of pleadings would also require amendment of a Scheduling Order, the movant must also show "good cause" for the amendment under Fed. R. Civ. P. 16(b)(4). *Seale v. Peacock*, 32 F.4th 1011, 1030 (10th Cir. 2022). To show good cause, the movant must demonstrate that "the scheduling deadlines [could not] be met despite the movant's diligent efforts." *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to

modify the scheduling order to permit the proposed amendment." *XY, LLC v. Trans Ova Genetics, LC*, No. 17-cv-00944-WJM-NYW, 2022 WL 2716550, at *9 (D. Colo. July 13, 2022), *report and recommendation adopted*, 2022 WL 4298400 (D. Colo. Sept. 19, 2022) (quoting *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000)).

The court has discretion whether to allow an amendment. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1217 (10th Cir. 2022), *cert. denied sub nom. San Juan Cnty. v. Chilcoat*, 143 S. Ct. 1748 (2023). "[A] district court may withhold leave to amend if the amendment would be futile." *Id*. at 1218. "Refusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resol. Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (same). "The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases." *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).

III.     *Analysis*

Mr. Washington argues that he has good cause to bring the Motion when he did because he only learned the facts to support the new claims late in discovery, and that justice requires allowing him to bring the new claims. Defendants oppose the Motion arguing undue delay, undue prejudice, and futility because the new claims would be barred by the statute of limitations. The court addresses these arguments in turn.

*A.    Undue Delay?*

Defendants assert that Plaintiff unduly delayed because he could have learned much sooner of the facts concerning the City's training policies and Mr. Dyer's role on scene by making a public document request even before filing this litigation. Defendants further point to their initial disclosure of Mr. Dyer as a potential witness, and to discovery having been open for fifteen months when Plaintiff filed this Motion.

This court respectfully disagrees. Mr. Washington timely issued written discovery requests, and he asserts that Defendants did not produce the key videos, documents, and information on which he premises the new claims until late in the discovery period. Specifically, he points to supplemental productions beginning the day before Defendant Wong's deposition and continuing through at least May 14, 2024. Motion at 3-4. Mr. Washington also asserts that he did not receive the key information concerning Mr. Dyer's supervisory role (and his alleged failure to properly exercise his supervisory authority) on scene until he learned of the subjects of his conversations on scene, for which the officers had muted their body-worn microphones. *Id*. at 4-5. This court notes that the redacted police report reflects "Sgt. L. Dyer" was the "Arresting Agency Supervisor's Name," (ECF No. 48 at 5), but the report does not mention Mr. Dyer as present on the scene. Nor does the report include a signature from Mr. Dyer or any explanation of what role he played in the arrest or otherwise. Mr. Washington asserts that it was only in Mr. Dyer's deposition (in late February 2024) that Mr. Washington learned that Mr. Dyer discussed the incident and tactical plans with the other Defendants as a supervisor. Reply at 7. Mr. Washington asserts that in the bodycam recordings, Defendants muted their microphones, and therefore he did not know the subject of the conversations until he deposed Defendants. In these

5

circumstances, the court finds that Mr. Washington did not unduly delay in filing his motion to amend.

      B.      *Undue Prejudice?*

Defendants argue that allowing the proposed amendment would unduly prejudice them because the case had already been pending for fifteen months when Mr. Washington filed the Motion. They argue that the amendment would require reopening discovery, and Defendants have already filed a motion for summary judgment. *See* ECF No. 71 (not referred). Mr. Washington disagrees, arguing that the City was already aware of its police department's policies and practices, and while the City may wish to conduct an internal investigation, that does not require reopening discovery. Mr. Washington is apparently prepared to proceed with the new claims without reopening discovery, or at least only reopening it to the extent of the discovery that he seeks in another motion (ECF No. 47) and in subpoenas he issued to the City as a nonparty. *See* ECF No. 52 (the City's motion to quash subpoenas). This court also granted Mr. Washington's unopposed request to extend the deadline for his response to the summary judgment motion, to thirty days after this court rules on the present Motion and the two discovery motions. ECF No. 77. Therefore, the briefing on the summary judgment motion has not yet closed.

While Defendants and the City could properly need discovery and expert deadlines to be reopened if the court allows Mr. Washington to amend his complaint, *no trial date has yet been set in this case*. This court also vacated the final pretrial conference upon the parties' request. And although Defendants' motion for summary judgment of course does not address the new claims, the deadline for dispositive motions could be reopened for purposes of the new claims as

well. The court understands the parties' concern that the case has already been pending for quite some time—at this point, over a year and a half. However, it is not clear that Mr. Washington is more responsible for the delays than Defendants are. Even if Mr. Washington had not sought to add the new claims, the pending discovery motions still would have delayed the case to the present. In these circumstances, the proposed amendment will not unduly prejudice Defendants.

  C.  *Futility and Relation Back?*

Defendants also assert futility because the amendment would not relate back to the filing of the original complaint under Rule 15(c), the statute of limitations has run, and Plaintiff is not entitled to equitable tolling. The parties do not dispute that the statute of limitations ran for both of the new claims on August 29, 2023, and thus the new claims would be barred unless the amendment relates back or equitable tolling applies.

As to the new claim against *Defendant Dyer,* Rule 15 provides in relevant part that "an amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The new claim that Mr. Washington proposes to bring against Defendant Dyer arises from the same conduct and occurrence that is the subject of his current claim against Dyer. This amendment thus comes within the scope of Rule 15(c)(1)(B) and relates back to the date of the original complaint.

Defendants resist this conclusion by assuming that *all* subsections of Rule 15(c) must be met in order for an amendment to relate back. This is incorrect. The subsections of Rule 15(c) are connected by the word "or." Fed. R. Civ. P. 15(c)(1)(B). The rule therefore provides three different ways in which an amendment may relate back to the filing of the original complaint. In

short, allowing the new claim against Mr. Dyer would not be futile.

As for the new claim against *the City*, Rule 15(c) provides for relation back when

> the amendment changes the party . . . against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C)(i), (ii). At first glance, this provision may not appear applicable when the amendment proposes adding a new defendant. This may explain why neither side briefs Rule 15(c)(1)(C) with respect to the claim against the City.

However, the Supreme Court applies Rule 15(c)(1)(C) to amendments that would add a new defendant:

> [T]he purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. . . . A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) (internal citation omitted, citing Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed. 2009)). Thus, Rule 15(c)(1)(C) applies when a plaintiff proposes to bring in a new defendant by amendment. *Id*. at 548 n.3. This is because

> **a plaintiff may know generally what party A does while misunderstanding the roles** that party A and party B played in the "conduct, transaction, or occurrence"

> giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, **she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties**. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Id*. at 549 (emphasis added). "The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue." *Id*.

Here, Mr. Washington asserts that he did not know, and could not have known until he received the supplemental productions in February through May 2024, that the constitutional violation and his injuries were caused by the City's alleged failure to train and supervise its officers. His counsel did not make a strategic choice to sue only the individual officers and not the City. Rather, counsel did not know the role that the City played in the conduct and occurrence.[1] Mr. Washington's proposed amendment thus comes within the scope of Rule 15(c)(1)(C).

As for whether the specific requirements of Rule 15(c)(1)(C) are met here, as noted above, neither side addresses this rule with respect to the claim against the City. As it is Defendants' burden to prove futility, *Openwater Safety*, 435 F. Supp. 3d at 1151, the court arguably could simply stop there and find Defendants failed to meet their burden to show that the

---

[1] If Mr. Washington's counsel had instead chosen to name the City as a defendant in the original complaint, the City very likely would have argued the claim should be dismissed for lack of sufficient factual allegations to support a plausible *Monell* claim. Defendants do not dispute that pleading a plausible *Monell* claim requires more facts than simply the assertion of a single constitutional violation by officers and a hunch that a city's training and supervisions policies caused it.

9

proposed claim would be time-barred.[2]

But even assuming the court must proceed to analyze the Rule 15(c)(1)(C) factors despite Defendants not doing so, the court still finds that relation back applies to the new claim against the City. First, subsection (C) requires that Rule 15(c)(1)(B) is satisfied, and it is. For the same reasons discussed above with respect to the new claim against Mr. Dyer, the new claim against the City arises out of the same occurrence as his original complaint. The new claim concerns the same occurrence as the original complaint, and adds that the officers' alleged violation of his constitutional rights arose from the City's failure to train and supervise its officers on (for instance) the proper use of canines and force in the circumstances the officers confronted on the day in question with Mr. Washington.

Second, the City had notice of this case within the time period allowed for service under Rule 4(m). Defendants are represented by, among others, the City Attorney's Office. The City therefore was on notice of the action when the Defendants were served, the City Attorney's Office has been involved in the case from the beginning, and the City is not prejudiced in defending the merits of the new claim.

Third, the City knew or should have known that Mr. Washington would have brought a *Monell* claim against it in the original complaint, if he had known then the information he has since gathered in discovery. "[R]elation back under Rule 15(c)(1)(C) depends on *what the party*

---

[2] This court does note, however, that on *dispositive* motions seeking to dismiss new claims as time-barred, sister courts have found it is the plaintiff's burden to show that relation back applies, citing out-of-circuit cases. *See, e.g.*, *Walker v. JTM Equip., Inc.*, No. 15-cv-60-ABJ, 2018 WL 11414570, *4 (D. Wyo. Jan. 25, 2018); *Abeyta v. Warfield*, No. 11-1106 KG/SCY, 2015 WL 13665475 (D.N.M. Feb. 18, 2015); *Bishop v. Oklahoma ex rel. Okla. Dep't of Hum. Servs.*, No. Civ-13-171-D, 2014 WL 6306791, at *3 (W.D. Okla. Nov. 13, 2014).

*to be added knew or should have known*, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski*, 560 U.S. at 541 (emphasis added). Thus, after *Krupski*, "the Rule 15(c) inquiry . . . focus[es] on whether a [new] defendant knew or should have known of the possibility of his implication in the suit." *Driscoll v. City & Cnty. of Denver*, No. 21-cv-02866-PAB-NRN, 2023 WL 2261132, at *4 (D. Colo. Feb. 28, 2023).

Although the original complaint does not mention or suggest that a lack of training and supervision contributed to Defendants' alleged violation of Mr. Washington's constitutional rights, Defendants were all officers of the Aurora Police Department acting within their official duties for the City. The City knew or had within its possession, custody, or control the policies, practices, and customs of its police department, and so had the ability to know whether the department did or did not train and supervise the officers on the specific issues with which they were faced when they were called to enforce a protective order against Mr. Washington. Mr. Washington's counsel believes that the information concerning training and supervision shows it was constitutionally lacking. The City no doubt will disagree with Mr. Washington that it is liable under *Monell.* But the question here is not whether Mr. Washington will ultimately prove the City is liable, but whether the City knew or should have known that he would have tried to state the *Monell* claim originally if he knew then what he knows now from the discovery that Defendants provided. Since that information was in the City's possession, custody, or control, this court concludes that the City knew or should have known that it was potentially implicated in this lawsuit.

The elements for such a claim are well-established and include that the plaintiff must allege an unconstitutional policy, informal custom or practice, decision of a final policy-maker,

11

ratification by such a policy-maker, or deliberately indifferent failure to train or supervise caused the officers' violation of his constitutional rights. *See, e.g.*, *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

The training and supervision information to which Mr. Washington refers in the Motion and proposed amended complaint is not so deficient that this court can say the claim would fail under Rule 12(b)(6). This is particularly true where Defendants did not attempt to argue in their Response that the proposed claim against the City would be implausible. Thus, the court finds that the City knew or should have known of the possibility that it was implicated in the suit. Mr. Washington would have brought a *Monell* claim against it in his original complaint, if he had known the facts that he has since collected in discovery.[3]

Defendants argue that Mr. Washington could and should have sent a public documents request for the City's training policies sooner. But again, the focus for relation back under Rule 15(c)(1)(C)(ii) is what *the City* knew or should have known—not Plaintiff's diligence and knowledge. *Krupski*, 560 U.S. at 541. Thus, the amendment to add the City as a Defendant meets the criteria of Rule 15(c)(1)(C) for relation back to the date of the original complaint, and allowing the claim would not be futile.

In light of these conclusions, there is no need to reach the arguments concerning equitable tolling.

IV.     *Conclusion*

For the reasons stated above, the court GRANTS Mr. Washington's motion (ECF No. 54)

---

[3] This ruling does not preclude the City from raising any arguments that its counsel deems warranted.

to amend the complaint. Within five (5) business days of this order being filed, Mr. Washington shall file a clean version of the amended complaint. Once the City has been served or waived service, if any party believes that the schedule should be amended, they shall confer and file a motion. Otherwise, the current schedule remains in place.[4]

DATED: November 7, 2024

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[4] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").